ORDERED.

**Dated: May 12, 2020**



Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                          Case No.: 3:19-bk-535-JAF

WENDY ANN RUMPTZ,                                Chapter 7

       Debtor.
_____/

GORDON P. JONES, CHAPTER 7
TRUSTEE,

                                        Adv. Pro. No.: 3:19-ap-86-JAF

       Plaintiff,
v.

WENDY ANN RUMPTZ,

       Defendant.
_____/

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

This proceeding came before the Court upon a Motion for Turnover and a Complaint

Objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) (Count I), § 727(a)(2)(B)

(Count II), § 727(a)(3) (Count III), § 727(a)(4)(A) (Count IV), § 727(a)(4)(D) (Count V), and §

727(a)(5) (Count VI). The Court conducted a trial on the consolidated matters on December 19, 2019. In lieu of oral argument, the Court took the matters under advisement and instructed the parties to submit memoranda in support of their respective positions.  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

## **Findings of Fact**

On February 18, 2019 (the "Petition Date"), the Debtor filed a Chapter 7 bankruptcy petition. On February 19, 2019, Gordon Jones (the "Trustee") was appointed as the Chapter 7 trustee in the case. In response to question 3 of the Debtor's Schedule A/B, which asks a debtor to list any cars, vans, trucks, tractors, sport utility vehicles, or motorcycles which the debtor owns, leases, or has a legal or equitable interest in, the Debtor listed only a 2018 Chevy Silverado and a Mitsubishi Outlander (the "Outlander"). (Trustee's Ex. 1).[1] In response to question 17 of the Debtor's Schedule A/B, the Debtor indicated that she had $102.00 in her Vystar Credit Union checking and savings accounts. (Id.) In response to question 30 of the Debtor's Schedule A/B, which asks whether a debtor is owed unpaid wages, the Debtor answered no. (Id.)

In response to questions 7 and 8 of her Statement of Financial Affairs ("SOFA"), the Debtor indicated that she had not made any payments to or for the benefit of an insider during the year before the Petition Date. (Id.)  In response to Question 13 of her SOFA, the Debtor indicated that she had not given any gifts totaling more than $600.00 to any person during the two years before the Petition Date. (Id.)  In response to Question 18 of her SOFA, which asks whether the Debtor, within two years of the Petition Date, sold, traded, or otherwise transferred any property,  other than property transferred in the ordinary course of the Debtor's business or financial affairs, the

---

[1] On her Schedule D, the Debtor indicated that Ally Financial held a secured claim as to the Outlander. The Debtor also indicated that she was a co-signor on the vehicle with her daughter-in-law but that she (the Debtor) made the payments.

Debtor indicated that her sole transfer during the two-year period prior to the Petition Date was the trade-in of a 2016 Kia Soul for the 2018 Chevy Silverado. (Id.)

On March 28, 2019, the Trustee conducted a § 341 meeting of creditors, where it came to light that the Debtor had failed to disclose a number of transfers which she made during the two-year period prior to the Petition Date. On March 29, 2019, the Debtor filed an amendment to her Statement of Financial Affairs (the "Amended SOFA") wherein she disclosed the following transfers in response to Question 18: 1) an aluminum boat, valued at less than $100.00, traded in November 2017 for a mower, which her former husband has possession of; 2) a 1995 Harley Davidson motorcycle sold in July 2017 for $500.00 to a bona fide purchaser; 3) a 1993 Harley Davidson motorcycle sold in August 2018 for $750.00 to a bona fide purchaser; 4) a 2003 Harley Davidson Road King motorcycle traded in November 2018 for a 1974 Plymouth Satellite, which her former husband owns and which is worth no more than $1,000.00 (collectively, the "Unlisted Vehicles"); 5) a 1986 GMC motorhome sold in October 2017 for $1,000.00 to a bona fide purchaser; and 6) another 1995 Harley Davidson motorcycle that she transferred to her husband in "early February" 2019 and which he sold in March 2019 for $1,200.00 (the "Second 1995 Harley"). (Trustee's Ex. 2).[2]

On April 26, 2019, the Trustee served notice upon the Debtor that he would conduct a Rule 2004 Examination of her on May 22, 2019 and requested that she produce, no later than May 20, 2019, "[c]opies of all documents showing the disposition of any motor vehicles, boats and trailers in which [the Debtor] [has] or had an interest at any time during the 2 years prior to the Petition Date." (Bankruptcy Case, Doc. 16). On or before May 15, 2019, the Debtor requested from the

---

[2] The Debtor also indicated on the Amended SOFA that a 1998 boat was sold in June 2016 for $500.00 to a bona fide purchaser. However, because June 2016 was more than two years before the Petition Date, the transfer was not required to be listed in response to Question 18 of the original SOFA.

Florida Highway Safety and Motor Vehicles Department (the "FHSMV") information related to vehicles associated with her name. (Debtor's Ex. 5). At the trial, the Debtor testified that she did not receive the information from the FHSMV before the Rule 2004 Examination.

On May 22, 2019, the Trustee conducted the Debtor's Rule 2004 Examination where she testified to the following. The Outlander was owned by the Debtor and her daughter in law, but the Debtor made the payments on the vehicle from July 2017 through the Petition Date. (Trustee's Ex. 6 at pp. 10-11). A 2018 Honda ATV (the "Honda ATV"), which the Debtor owned (and properly listed on her Schedule A/B), was primarily used by her son for her grandchildren. (Id. at p. 12). The Debtor purchased the Honda ATV in September 2018 and made the payments through the Petition Date. (Id.) In May 2018, the Debtor bought her two-year old grandson an ATV (the "Child's ATV"), which cost more than $600.00, for his birthday. (Id. at p. 19). As of the Petition Date, the Debtor owned the Second 1995 Harley. (Trustee's Ex. 6 at pp. 30-31; Trustee's Ex. 7). On March 1, 2019, the Second 1995 Harley was transferred from the Debtor to a third party for $1,200.00. (Trustee's Ex. 7). As of the Petition Date, the Debtor was owed an employment bonus of more than $4,000.00. (Trustee's Ex. 6 at pp. 34-38).

On May 22, 2019, after the conclusion of the Rule 2004 Examination, the Debtor filed a second Amended Statement of Financial Affairs (the "Second Amended SOFA"). (Trustee's Ex. 3). The Second Amended SOFA referred to "#13 List Certain Gifts" and listed the gift of the Child's ATV to the Debtor's grandson. (Id.) The Second Amended SOFA also referred to "#14 contributions" and indicated that the Debtor made payments on the Outlander, which her daughter-in-law drove, and on the Honda ATV, which her son primarily used, until the Petition Date. (Id.)

On May 23, 2019, the Debtor filed an amended Schedule A/B which included the following items not included on her original Schedule A/B: 1) the Second 1995 Harley, which the Debtor

4

valued at $1,000.00; and 2) $4,268.82 in employment bonuses, $3,170.82 of which was for January 2019 and $1,098.00 of which was for the pre-petition portion of February 2019.  (Trustee's Ex. 4). The amendment also listed $423.03 as the balance in the Debtor's Vystar Credit Union checking and savings accounts as of the Petition Date.

On that same day, the Debtor filed an Amended Schedule C. (Trustee's Ex. 4). The Debtor claimed the Second 1995 Harley as exempt pursuant to Fla. Stat. § 222.25(1), $4,000.00 of the $4,268.82 in bonuses as exempt pursuant to Fla. Stat. § 222.25(4), and $179.97[3] of her household goods and furnishings as exempt pursuant to Fla. Const. Art. X, § 4(a)(2).

The Debtor offered the following explanations for the omissions and inaccuracies on her bankruptcy schedules.

### Failure to List the Transfers of the Unlisted Vehicles during the 2 years prior to the Petition Date and Failure to list the Second 1995 Harley as an Asset

The Debtor is married but has been separated from her husband since December 2018. The Debtor testified that during her six-year marriage, her husband purchased a number of motor vehicles. Although the Debtor's husband purchased and paid for the vehicles, they were titled in the Debtor's name for convenience's sake. According to the Debtor, her employer, a recreational vehicle dealer, employed a title clerk, who was permitted to perform title work for employees. The Debtor's husband would give the title to the Debtor, who would then have the vehicle titled in her name by the title clerk. The vehicles were not titled in the Debtor's husband's name because he would have been required to be present and produce a driver's license. The Debtor's husband was at work and did not have time to come to the Debtor's employer (or go elsewhere) to have the vehicles titled in his name. The Debtor would then immediately sign the title, give the title to her

---

[3] The Debtor listed the value of her household goods and furnishings at $350.00, resulting in a non-exempt amount of $170.03.

husband, and her husband would later fill in the purchaser's name when he sold the vehicle. The

Debtor's husband received all the proceeds from the vehicle sales, and the Debtor and her husband

did not have a joint back account.

The following exchange occurred at the 2004 exam:

Q.      And so just as a general matter, given your –the nature of your current employment
        and your familiarity with the titling of vehicles, do you understand that if a vehicle
        is titled in your name that you have a legal ownership in that vehicle?

A.      No, I really didn't understand that.

Q.      Okay, what do you think it meant?

A.      Well we were married. So I figured he was entitled to it as much as I was, so that's
        why I did it for him.  It was a convenience.

Q.      But I believe it was your testimony [at the § 341 meeting of creditors] that you
        understood that if a vehicle was titled in your name that you had a legal interest, a
        legal ownership interest in that vehicle. So is it your testimony today that that was
        not how you understood titling to work?

A.      I know that if it's titled to me I own it.  But I have no right to the vehicle because
        I'm not the one that paid for it.

Q.      Okay. But you still think you are the owner of that vehicle?

A.      Technically, I guess I am. But I signed the titles over to him as soon as I got them.

(Trustee's Ex. 6 at pp. 28-29). At the trial, the Debtor testified that she did not consider herself to

be the owner of the Unlisted Vehicles or the Second 1995 Harley because she did not pay for

them.[4]

**Failure to List the Payments on the Outlander and the Honda ATV as Payments for
the Benefit of an Insider**

The Debtor testified that she did not list as payments for the benefit of an insider: 1) the

payments she made on the Outlander, owned by her and her daughter-in-law but driven only by

---

[4] The 1986 GMC motorhome, unlike the Unlisted Vehicles and the Second 1995 Harley, was purchased by the
Debtor, and her husband had no involvement with it.  (Trustee's Ex. 6 at pp. 33-34).

her daughter-in-law; or 2) the payments she made on the Honda ATV, owned by her but primarily used by her son for her grandchildren, because she made the payments for her own benefit in an effort to protect her credit.

### Failure to List the Correct Vystar Back Account Balance

The Debtor testified that she obtained the $102.00 figure, which she listed on Line 17 of her Schedule A/B as the balance in her Vystar Credit Union checking and savings accounts, by checking her Vystar account balance. A review of the Debtor's February 2019 Vystar account statement indicates that her checking account balance as of Saturday, February 16, 2019 was $418.00. (Trustee's Ex. 8). However, a number of purchases which the Debtor made with her debit card on Sunday, February 17, 2019 and Monday, February 18, 2019, Presidents' Day (the Petition Date), were not actually deducted from the account until February 19, 2019. (Id.) Taking into account all of the debit card purchases which the Debtor made until the time of the bankruptcy filing (12:52 p.m.) on the Petition Date, the Debtor's checking account balance at that time was $197.39.  (Id.) Taking into account all of the debit card purchases which the Debtor made until the end of the day on the Petition Date, the Debtor's checking account balance at that time was $102.32.  (Id.)

### Failure to List the Employment Bonuses

The Debtor testified that she did not hide her bonuses and that she gave the information to her attorney. The Debtor conceded that she did not list her bonuses on her Schedules A/B or I but believed she included them in her SOFA.[5]  The Debtor indicated on her SOFA that her gross income from wages, commissions, bonuses, and tips for the period from January 1, 2019 until the

---

[5] The Debtor's attorney admitted at trial that she was not aware that Schedule A/B requires a debtor to list the debtor's bonuses.

Petition Date was $7,417.32.  However, according to the Trustee's Exhibit 9, the Debtor's gross pay for the pay period ending January 31, 2019, over two weeks before the Petition Date, was $11,238.14, an amount that significantly exceeds the amount listed on her SOFA.

### Failure to List the Gift to Grandson

The Debtor testified that she bought the Child's ATV for her two-year old grandson for his birthday in April 2019 at a cost of $569.00 plus tax, thus exceeding the $600.00 threshold.

### Conclusions of Law

"In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). The Bankruptcy Code favors discharge of the honest debtor's debts and provisions denying a debtor's discharge are construed liberally in favor of the debtor and strictly against the creditor.  Cohen v. McElroy (In re McElroy), 229 B.R. 483, 487 (Bankr. M.D. Fla. 1998). However, there are limitations on the right to a bankruptcy discharge. Id. "Section 727 ...  provides that a debtor shall be granted a discharge unless one or more of twelve enumerated reasons to deny the discharge exists." Menotte v. Hahn (In re Hahn), 362 B.R. 542, 546 (Bankr. S.D. Fla. 2007). The Trustee seeks to have the Court deny the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), and 727(a)(5).

### 11 U.S.C. § 727(a)(2)(A)

"In order for an individual to get th[e] extraordinary relief [of a discharge], the Bankruptcy Code requires that a Chapter 7 debtor fulfill certain fundamental duties, the most essential of which is the complete and honest disclosure of assets and recent transfers by the debtor." Syngenta Seeds, Inc. v. Eigsti (In re Eigsti), 323 B.R. 778, 783 (Bankr. M.D. Fla. 2005). "When a debtor does not

fully disclose assets or recent transfers on ... sworn Schedules or Statements of Financial Affairs, the court may decide to deny discharge of debt pursuant to 11 U.S.C. § 727." Id. Section 727(a)(2)(A) provides that the court shall not grant a discharge if, within one year before the date of the filing of the petition, the debtor "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed" property of the debtor. Under § 727(a)(2)(A), the objecting party must prove by a preponderance of the evidence that: (1) a transfer occurred; (2) the transfer was of the debtor's property; (3) the transfer was within one year of the petition; and (4) the transfer was done with the intent to hinder, delay, or defraud a creditor or the trustee. Posillico v. Bratcher (In re Bratcher), 289 B.R. 205, 217 (Bankr. M.D. Fla. 2003).

The Trustee asserts that the Debtor's transfer of the following property during the year prior to the Petition Date warrants the denial of her discharge pursuant to § 727(a)(2)(A): 1) the sale of the 1993 Harley in August 2018; 2) the transfer of the 2003 Harley Road King in November 2018 in exchange for a Plymouth car; 3) the payments on the Outlander and the Honda ATV; and 4) the gift of the Child's ATV to her grandson.

The Debtor explained that the 1993 and 2003 Harleys were titled in her name when her husband purchased them, after which she immediately signed the titles in blank and gave them to her husband. The Debtor's husband's dispositions of the motorcycles during August and November 2018 were transfers by the Debtor to her husband of the Debtor's property within one year of the Petition Date. The question is whether the dispositions of the motorcycles by the Debtor's husband constitute transfers by the Debtor to her husband with the intent to hinder, delay, or defraud a creditor. The Court finds that they do not. The Debtor testified that she did not pay

for the motorcycles when her husband purchased them, and there is no evidence that the Debtor's husband purchased the motorcycles as a gift to the Debtor.  Although the Debtor legally owned the motorcycles, she did not consider them hers. The Court observed the Debtor's demeanor and finds her testimony and explanation to be credible.  There is simply no indication to the Court that the Debtor prompted her husband to sell or trade the motorcycles for the purpose of hindering, delaying, or defrauding the Debtor's creditors.[6]

The Court turns to the payments which the Debtor made on the Outlander and the Honda ATV and the purchase of the Child's ATV for her grandson. For obvious reasons, the Court is not a fan of co-signing a debt for another. However, once such an obligation is undertaken, the co-signor is legally obligated to make the payments. While the payments on the Outlander and the Honda ATV benefitted the Debtor's son, daughter in law, and her grandchildren, the Court finds that the Debtor made the payments for the purpose of maintaining her credit and did not do so with the intent to hinder, delay, or defraud her other creditors. Additionally, the Court finds that the Debtor purchased the Child's ATV for her two-year old grandson's birthday out of love and affection and not for the purpose of defrauding her creditors.[7]

### 11 U.S.C. § 727(a)(2)(B)

Section 727(a)(2)(B) of the Bankruptcy Code provides that the court shall not grant a discharge to a debtor if "the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed property of the estate, after the filing of the petition."  11 U.S.C. § 727(a)(2)(B).  "To prevail under [§ 727(a)(2)(B)], the plaintiff must prove that (1) the debtor,

---

[6] The Court is not here to judge whether the course of dealing between the Debtor and her husband was a good idea.
[7] The Court notes that it is not being called on to judge the wisdom of the purchase of the Honda ATV and the Child's ATV during the months preceding the bankruptcy filing.

(2) transferred or concealed, (3) property of the estate, (4) with the intent to hinder, delay or defraud a creditor, (5) after the filing of the petition." Adams v. Bostick (In re Bostick), 400 B.R. 348, 356 (Bankr. D. Conn. 2009).

The Trustee asserts that the Debtor's failure to disclose her interest in the Second 1995 Harley on the petition and the post-petition transfer of the Second 1995 Harley warrant the denial of her discharge pursuant to §727(a)(2)(B). The Court will address the Trustee's claim as to the Debtor's failure to list the Second 1995 Harley in its discussion of § 727(a)(4)(A), below. See In re Allen, 533 B.R. 916, 922 (Bankr. M.D. Fla. 2016) (holding that claims that a debtor fraudulently failed to schedule assets should be raised under § 727(a)(4)). For the reasons set forth in its discussion of § 727(a)(2)(A), the Court finds that the Debtor did not transfer the Second 1995 Harley with the intent to hinder, delay, or defraud her creditors. The Court will not deny the Debtor's discharge pursuant to § 727(a)(2)(B).

### 11 U.S.C. § 727(a)(3)

Section 727(a)(3) of the Bankruptcy Code provides for the denial of a debtor's discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). The purpose of section § 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge. See PNC Bank v. Buzzelli (In re Buzzelli), 246 B.R. 75, 95 (Bankr. W.D. Pa. 2000) (citing Meridian Bank v. Alten (In re Alten), 958 F.2d 1226 (3rd Cir. 1992)). This statute also ensures that the trustee and creditors are supplied with dependable information on which they can

rely in tracing a debtor's financial history. See Meridian Bank, 958 F.2d at 1230. "Section 727(a)(3) does not require a full accounting of every business transaction, but 'there should be some written records, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial completeness and accuracy.'" In re Khanani, 2005 WL 2482392, at *6 (Bankr. M.D. Fla. Sept. 27, 2005) (quoting In re Sowell, 92 B.R. 944, 947 (Bankr. M.D. Fla. 1988)).

A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Meridian Bank, 958 F.2d at 1232. Once a creditor shows that a debtor's records are inadequate, the burden shifts to the debtor to justify such inadequacies. Id. at 1233. In determining whether a debtor's inadequate recordkeeping is justified, a trier of fact must consider all of the circumstances of the case. Id. at 1231. Such justification "depends largely on what a normal reasonable person would do under similar circumstances" and the relevant inquiry should consider the debtor's education, experience, and sophistication "and any other circumstances that would be considered in the interest of justice." Id. "The failure to keep records must be determined on a case by case basis, and a debtor's failure to keep records is not an absolute bar to a discharge." In re Bryant, 1997 WL 375692, at *3 (Bankr. M.D. Fla. Apr. 30, 1997).

The Trustee argues that the Debtor's failure to maintain records related to her ownership and transfer of the Unlisted Vehicles, the Second 1995 Harley, and the 1986 GMC motorhome warrants the denial of her discharge pursuant to § 727(a)(3). As the Court previously explained, after having the Unlisted Vehicles and the Second 1995 Harley titled in her name, the Debtor immediately signed the titles and gave them to her husband, ridding herself, at least in her mind,

of any further involvement. She did not consider herself to be the owner of the Unlisted Vehicles and the Second 1995 Harley. The Court finds that given the circumstances in this case, the Debtor's failure to maintain records related to the ownership and transfer of the Unlisted Vehicles and the Second 1995 Harley does not warrant the denial of her discharge.  Additionally, the Court finds that the Debtor's failure to maintain records related to her ownership and transfer of the 1986 GMC motorhome does not bar her discharge.

**11 U.S.C. § 727(a)(4)(A)**

Section 727(a)(4)(A) provides for denial of a debtor's discharge if he "knowingly and fraudulently, in or in connection with the case—made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  The First Circuit has stated:

> [T]he very purpose of ... § 727(a)(4)(A) is to [ensure] that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to ensure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction ... Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).

A party seeking the denial of a discharge pursuant to § 727(a)(4)(A) must establish the following elements: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statements with fraudulent intent; and 5) the statement related materially to the bankruptcy case. Shappell's Inc. v. Perry (In re Perry), 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000). A false oath may involve a false statement or omission. Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999). "There is a difference between a debtor who is trying to hide assets with a false oath or material

omissions in his [schedules], and a debtor who, through inadvertence, mistake, or ignorance ... omits[s] certain assets ...” In re Dupree, 336 B.R. 520, 527 (Bankr. M.D. Fla. 2005). In determining whether a debtor has the requisite fraudulent intent, a court should analyze whether omissions or nondisclosures are “part of a scheme ... to retain assets for [the debtor's] own benefit at the expense of his creditors.” Id.

The Trustee asserts that the Debtor's failure to list the following warrants the denial of her discharge pursuant to § 727(a)(4)(A) : 1) the transfer of the Unlisted Vehicles and the 1986 GMC motorhome on her SOFA; 2) her interest in the Second 1995 Harley and the Bonuses on her Schedule A/B; 3) the payments on the Outlander and the Honda ATV as pre-petition payments made for the benefit of an insider on her SOFA; 4) the purchase and gift of the Child's ATV for her grandson on her SOFA; and 5) the correct balance in her Vystar checking account on her Schedule A/B.

The Court does not find that the Debtor omitted any of the transfers or assets from her bankruptcy schedules with fraudulent intent. First, as the Court previously explained, although the Unlisted Vehicles and the Second 1995 Harley were titled in the Debtor's name, she did not believe she owned them. The Court finds that the Debtor's failure to list the transfer of the 1986 GMC motorhome was an oversight. Second, although the Court is troubled by the Debtor's failure to properly list her pre-petition bonuses on her bankruptcy schedules, the Court does not find that the Debtor intentionally omitted the bonuses in an attempt to defraud her creditors. Instead, the Court finds that the Debtor's failure to list her bonuses is the result of her attorney's failure to properly analyze the information which the Debtor provided to her. Third, the Debtor specifically indicated on her Schedule D that she was a co-signor on the Outlander, “[her] daughter in law's car,” but that she made the payments. This disclosure alone precludes a finding of fraudulent intent as to

14

her failure to list the Outlander payments on her SOFA as payments to or for the benefit of an insider. Moreover, the Debtor explained that, while she listed the monthly payments on the Outlander and the Honda ATV on her Schedule J, she did not list them on her SOFA as payments to or for the benefit of an insider because she made the payments for her own benefit, in an effort to protect her credit. The Court finds the explanation entirely reasonable. Finally, the Court finds that the Debtor's failure to list the purchase of the Child's ATV was an oversight.

It is unclear to the Court exactly how the Debtor obtained the $102.00 figure she listed as the balance in her Vystar checking and savings accounts. Amounts deducted post-petition from a debtor's bank account to pay for pre-petition debit card transactions are property of the estate. See In re Gardner, 2015 WL 1579586, at * 6 (Bankr. N.D. Ohio Apr. 3, 2015). It appears that the Debtor mistakenly believed that the amount listed on her bankruptcy petition was supposed to take into account all debit charges which she made up until the time of the filing of the petition on the Petition Date, irrespective of whether they were actually deducted from the account prior to the time of filing.  Whatever the case, the Court finds that the Debtor did not list the incorrect balance with fraudulent intent.

### 11 U.S.C. § 727(a)(4)(D)

Section 727(a)(4)(D) of the Bankruptcy Code provides for the denial of a debtor's discharge if the debtor "knowingly and fraudulently, in or in connection with the case withheld from an officer of the estate entitled to possession under [the Bankruptcy Code] any recorded information … relating to the debtor's property or financial affairs."  11 U.S.C. § 727(a)(4)(D). "[Section 727(a)(4)(D)] requires a finding of intent, which can be established with circumstantial evidence such as when a debtor's conduct is evasive or persistently uncooperative or a debtor fails to explain his noncompliance with an order directing him to produce documents." Neier v.

Friedberg (In re Friedberg), 516 B.R. 205, 212 (Bankr. D. Conn. 2014). The Trustee asserts that the Debtor's failure to produce documents related to the transfer of motor vehicles warrants the denial of her discharge under § 727(a)(4)(D). The Debtor's testimony that she did not receive the information related to the vehicle transfers from the FHSDMV prior to the Rule 2004 Examination does not explain why she did not ever provide the information to the Trustee. However, in the absence of evasion on the part of the Debtor, lack of cooperation on the part of the Debtor, or any other circumstantial evidence of intent, the Court does not find that the Debtor knowingly and fraudulently withheld information from the Trustee.

### 11 U.S.C. § 727(a)(5)

Section 727(a)(5) of the Bankruptcy Code provides for the denial of a debtor's discharge if the debtor "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Pursuant to § 727(a)(5), "once it has been established that the debtor has a cognizable ownership interest in a specific identifiable property at any given time not too far removed in time from the date of filing his petition, the burden shifts to the debtor to explain satisfactorily the loss of that particular asset if at the time the petition is filed, the debtor claims that it no longer has the particular property." Manhattan Leasing Systems, Inc. v. Goblick (In re Goblick), 93 B.R. 771, 775 (Bankr. M.D. Fla. 1988). For a debtor's explanation to be satisfactory, the explanation must "convince the judge." Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984). "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." Id.

The Trustee argues that "the complete lack of documentation or any evidence" that the Debtor's husband had an equitable interest in motor vehicles which she titled in her name suggests

"the full extent of the transfers remains unexplained." The Court finds that the Debtor provided a satisfactory explanation as to the ownership and transfer of the motor vehicles that are the subject of this adversary proceeding and will not deny the Debtor's discharge pursuant to § 727(a)(5).

**Motion for Turnover**

The Trustee seeks the turnover of the $1,200.00 in proceeds from the sale of the Second 1995 Harley, the non-exempt household goods and furnishings of $170.03, and the non-exempt portion of the bonuses in the amount of $268.82. Florida law provides for the exemption of up to $6,000.00 in personal property comprised of the following: a $1,000.00 exemption for personal property (Fla. Const. Art. X, § 4(a)(2)); a $1,000.00 exemption for the debtor's interest in a single motor vehicle (Fla. Stat. § 222.25(1)); and a $4,000.00 exemption for the debtor's interest in personal property if the debtor does not claim or receive the benefits of a homestead exemption under Fla. Const. Art. X, § 4(a)(1).[8] Because the Debtor owned the Second 1995 Harley on the Petition Date, she was permitted to claim $1,000.00 of its value as exempt pursuant to Fla. Stat. § 222.25(1). The Trustee is entitled to the difference between the value of the Second 1995 Harley on the Petition Date, which the Court finds to be $1,200.00, and the claimed exemption of $1,000.00. The Court will order the Debtor to turn over $200.00 of the Second 1995 Harley sales proceeds, the non-exempt household goods and furnishings in the amount of $170.03, and the non-exempt portion of the bonuses in the amount of $268.82.

**The Debtor's Attorney's Representation of the Debtor in this Bankruptcy Case**

The Trustee took issue with the quality of the representation provided by the Debtor's attorney in this case. Regrettably, the Court agrees. A debtor's attorney has a duty to investigate the debtor's financial affairs. According to the Trustee, it is very easy to perform an asset search

---

[8] The Trustee does not argue, and the Court does not find, that the Debtor's Amendment to her Schedule C was improper.

for motor vehicles. Such a search in this case would have unearthed the Debtor's legal ownership of the Unlisted Vehicles, the 1986 GMC motorhome, and the Second 1995 Harley and would have prompted a discussion and recommendation that the Debtor list the transfer of the Unlisted Vehicles and the 1986 GMC motorhome and the ownership of the Second 1995 Harley on her bankruptcy schedules. Additionally, it appears that the Debtor's failure to list her bonuses on her schedules is attributable to her attorney's failure to properly analyze the information which the Debtor provided to her. The Debtor's attorney seemed almost cavalier about the omissions.[9]  As the Trustee points out, it is not his job to complete a debtor's schedules. The reason a debtor hires an attorney in the first instance is to dot the i's and cross the t's. Moreover, an attorney has a duty to represent her client consistent with professional standards, and the attorney's decision to charge a client a fee below the prevailing market rate does not somehow absolve the attorney of that duty.[10]  The Court believes that this adversary proceeding, which utilized the resources of the

---

[9] The following exchange occurred during the Debtor's attorney's cross-examination of the Trustee:

> Q.   Isn't it possible that debtors' attorneys are also very busy and maybe in their best efforts they don't get everything done either and that debtors are confused about their financial affairs because they are filing bankruptcy, and that may account for some of their omissions?

> A.   I do not think missing the transfer of motor vehicles is excusable because it's so easy to search it.

> Q.   So you did search it, and you were aware of it?

> A.   I was.

> Q.   Okay, so. So there wasn't any really loss there for you as a trustee, correct?

[10] The following exchange also occurred during the Debtor's attorney's cross-examination of the Trustee:

> Q.   Now you talked about attorney's fees for debtors, you said they get paid a lot of money. What is the going rate for a debtor's attorney?

> A.   Probably $1,000.00 to $1,800.00.

> Q.   So then maybe I get a little bit more leeway because I only charged $650.00 in this case?

18

Trustee, the Debtor, the Debtor's attorney, and the Court would likely have been avoided if the Debtor's attorney had properly represented her client.[11]

## Conclusion

The Debtor did not transfer property within the year prior to the Petition Date or after the Petition Date with the intent to hinder, delay, or defraud creditors. The Court will therefore not deny her discharge pursuant to § 727(a)(2). The Debtor's failure to maintain records related to her ownership or transfer of certain motor vehicles does not warrant the denial of her discharge pursuant to § 727(a)(3). The Debtor did not fraudulently omit assets or transfers from her bankruptcy schedules. The Court will therefore not deny her discharge pursuant to § 727(a)(4)(A). The Debtor did not fraudulently withhold documents from the Trustee. The Court will therefore not deny her discharge pursuant to § 727(a)(4)(D). The Debtor did not fail to satisfactorily explain any loss of assets in this case. The Court will therefore not deny her discharge pursuant to § 727(a)(5). The Court will grant the Trustee's Motion for Turnover as to $200.00 of the sales proceeds from the Second 1995 Harley, the non-exempt household goods and furnishings of $170.03, and the non-exempt portion of the bonuses in the amount of $268.82. The court will enter a separate order and judgment consistent with these Findings of Fact and Conclusions of Law.

---

[11] The Debtor's attorney has appeared before the Court for many years, and the Court has never previously observed inadequate representation on her part.